IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CHRISTIN LONG**, individually and as a representative of the class, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | Civil Action No. |
| **RETS TECH CENTER, INC. D/B/A FORTIS COLLEGE** and **EDUCATION AFFILIATES INC.**, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

CHRISTIN LONG ("Plaintiff"), by and through her attorneys BROWN, LLC and, on behalf of herself and the class set forth below, brings the following Class Action Complaint against RETS TECH CENTER, INC. and EDUCATION AFFILIATES INC., and alleges as follows:

## PRELIMINARY STATEMENT

1.      This putative class action is brought pursuant to the Fair Credit Reporting Act ("FCRA") against a provider of educational services. Defendants RETS TECH CENTER, INC. (dba "FORTIS COLLEGE") (hereinafter "Fortis College") and EDUCATION AFFILIATES INC. acted in concert to routinely violate the FCRA's core protections by procuring background checks on employees and job applicants without providing proper disclosure and/or obtaining authorization. Recognizing that peoples' jobs depend on the accuracy of consumer reports, Congress has chosen to regulate the procurement, use and content of such background checks through the FCRA. 15 U.S.C. § 1681.

2.      The FCRA contains several provisions which pertain specifically to the use of consumer reports for employment purposes. In light of the potentially determinative role that consumer reports can play regarding an applicant's employment prospects, the FCRA provides:

(2) Disclosure to consumer

(A) In general
Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

3.      The disclosure and authorization requirements are important because they enable consumers to control and correct the information that is being disseminated about them by third parties. Moreover, the disclosures inform consumers about their rights pursuant to the FCRA, rights of which consumers are generally completely unaware.

4.      Consumers have a statutory right to both obtain a copy of their consumer reports and to have errors in their reports corrected. *See* 15. U.S.C. §§ 1681g, 1681i. In order to enable consumers to exercise those rights, it is critical that consumers are aware that a report is going to be procured so that, if they choose, they can request a copy of the report to proactively ensure that it does not contain any errors.

5.      Defendants have willfully and systematically violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer reports on Plaintiff and other putative class members for employment

purposes, without first making proper disclosures and/or obtaining authorization in the format required by the FCRA.

6.     Defendants have further willfully and systematically violated 15 U.S.C. § 1681b(b)(3) by taking adverse action on Plaintiff and other putative class members based on the procured consumer reports without providing proper pre-adverse action notice, a copy of the report, a written description of rights, and reasonable time to respond to Defendants or dispute the report.

7.     Based on Defendants' conduct, Plaintiff asserts FCRA claims on behalf of herself and the class defined below. On behalf of herself and the class, Plaintiff seeks statutory damages and/or actual damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

## PARTIES

8.     Defendant Fortis College provides educational and research services. The college offers bachelor's, master's, pre-professional, and post-master's degrees and continuing education programs, as well as programs in many fields, such as nursing, medical technologies, dental, healthcare, information technology, business and professional services, carpentry, construction management, and welding. Fortis College was founded in 2008 and is based in Phoenix, Arizona.[1]

9.     According to its website, Fortis College is a "leading post-secondary network of colleges and institutes that engages students in a powerful learning and training experience for lifelong growth." The college offers career-based training, diploma and degree-granting

---

[1] See Defendant Fortis College's Bloomberg Company Overview:
https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=143257078 (Last Accessed June 17, 2019).

programs at over 40 schools in 15 states to prepare students for careers in healthcare, business and technology and various trades. Each Fortis campus is accredited by a nationally recognized body.[2]

10.     Defendant RETS TECH CENTER, INC. (dba "FORTIS COLLEGE") is based in Montgomery County in Ohio and has registered agent: CORPORATION SERVICE COMPANY, 50 WEST BROAD STREET SUIT 1330, COLUMBUS, OHIO 43215.

11.     Plaintiff received an offer of employment at Fortis College's Cuyahoga Falls, Ohio location.

12.     Defendant Education Affiliates Inc. owns and operates a network of post-secondary schools in the United States that offer various career training programs in various fields, such as nursing, business and professional program, healthcare and medical, dental, and skilled trades and commercial driving fields. Education Affiliates Inc. was formerly known as The Marco Group, Inc. and changed its name to Education Affiliates Inc. in November 2004. The company was incorporated in 1984 and is based in Baltimore, Maryland.[3]

13.     According to its website, Education Affiliates Inc. operates a network of post-secondary educational institutions and training centers across the nation, including Defendant Fortis College. Education Affiliates Inc. has a total of 51 school locations nationwide.[4]

14.     According to Maryland's Secretary of State website, Education Affiliates Inc. maintains a principal office at 5026-D CAMPBELL BLVD BALTIMORE MD 21236 and

---

[2] See Defendant's website: https://www.fortis.edu/about-us.html (Last Accessed June 17, 2019).
[3] See Defendant Education Affiliates Inc.'s Bloomberg Company Overview:
https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=4050385 (Last Accessed June 28, 2019).
[4] See Defendant Education Affiliates Inc.'s website: http://www.edaff.com/ (Last Accessed June 28, 2019).

registered agent: CSC-LAWYERS INCORPORATING SERVICE COMPAN 7 ST. PAUL STREET SUITE 820 BALTIMORE MD 21202.

15.     Plaintiff Christin Long is a resident of Akron, OH.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

17.     Venue is proper in this District because a substantial portion of the acts giving rise to this action occurred in this District.

## ALLEGATIONS RELATING TO PLAINTIFF CHRISTIN LONG

18.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

19.     On or about April 4, 2019, Plaintiff received a letter from Fortis College Campus President and member of Education Affiliates Inc.'s Talent Acquisition Team Brian Parker extending Plaintiff an offer of employment to work as a Director of Admissions.

20.     On April 4, 2019, Plaintiff sent the signed offer letter to Peggy Aschelman, Human Resources Manager/Accounts Payable Manager of Fortis College, via e-mail.

21.     On April 4, 2019, Plaintiff received an e-mail from Education Affiliates Inc. that read "Congratulations on accepting the position of Director of Admissions. We are excited that you are joining our organization and look forward to you starting on Apr 15, 2019."

22.     On or around April 8, 2019, Defendants directed an outside consumer reporting agency, CastleBranch ("Castlebranch") to provide a consumer report containing information regarding Plaintiff.

5

23.     Defendants' purpose in directing CastleBranch to provide a consumer report containing information regarding Plaintiff was to evaluate Plaintiff's eligibility to work for Defendants.

24.     Prior to the time at which Defendants directed CastleBranch to provide a consumer report containing information regarding Plaintiff, Plaintiff had not been provided with a proper disclosure that a consumer report could be obtained for purposes of her employment.

25.     As a result, Plaintiff was unaware that a consumer report was being procured from a consumer reporting agency and evaluated for employment purposes.

26.     On or about April 12, 2019, CastleBranch furnished a consumer report to Defendants.

27.     The consumer report CastleBranch furnished to Defendants allegedly bore on Plaintiff's character and general reputation.

28.     Based on the information contained in the consumer report obtained from CastleBranch, Defendants determined that Plaintiff was ineligible to continue working for Defendants.

29.     Plaintiff worked for Defendants on April 15, 2019.

30.     On April 15, 2019, Plaintiff's first day of employment with Defendants, at approximately 12:30 PM, Brian Parker and Campus Director Peter Martinello informed Plaintiff that Defendants had procured a background report of Plaintiff.

31.     Plaintiff was not provided a pre-adverse action notice, a copy of the background report, or a summary of her rights under the FCRA.

32.     Later that same day, April 15, 2019, at approximately 8:30 PM, Brian Parker called Plaintiff to inform her that due to the results of the background report, Defendants terminated Plaintiff's employment.

33.     Defendants did not provide Plaintiff with an opportunity to respond to or dispute the results of the background report before taking adverse action against her.

34.     Defendants did not provide Plaintiff with a written description of her rights under the FCRA before taking adverse action against her.

35.     Defendants did not provide Plaintiff with a copy of the background report they procured before taking adverse action against her.

36.     Defendants failed to provide Plaintiff proper adverse action notice with adequate disclosures regarding the outside consumer reporting agency that provided background report and Plaintiff's rights to free disclosure of the report and to dispute the accuracy of the information contained in the report.

37.     On April 17, 2019, Plaintiff requested a copy of a signed consent and disclosure form for the background check from Peggy Aschelman via e-mail.

38.     On April 17, 2019, Peggy Aschelman responded via e-mail with the background report attached, stating "I am attaching a copy of the Background Check, you were informed that we run a background check when hired. Background check are done automatically no form signed."

39.     Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report on Plaintiff for employment purposes despite the fact that Plaintiff was not provided with a clear and conspicuous written disclosure, in a document consisting solely of the

disclosure, that a consumer report may be obtained for employment purposes. ("Disclosure Claim").

40.     Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report on Plaintiff for employment purposes despite the fact that Plaintiff did not provide authorization to Defendants to procure the report. ("Authorization Claim").

41.     Defendants further willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by taking adverse action—i.e. determining that Plaintiff was ineligible to continue working for Defendants—based on the consumer report without providing Plaintiff with a written description of her rights under the FCRA, a copy of the background report, or reasonable time to dispute the results of the report. ("Adverse Action Claim").

## ALLEGATIONS RELATING TO DEFENDANTS' BUSINESS PRACTICES

42.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

43.     Defendants conduct background checks on their job applicants.

44.     Defendants do not perform these background checks in-house. Rather, Defendants rely on outside consumer reporting agencies to obtain this information and report it to Defendants.

45.     These reports constitute "consumer reports" for purposes of the FCRA.

46.     Defendants use CastleBranch as a consumer reporting agency.

47.     The FCRA requires that, prior to procuring consumer reports, persons must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements. *See* 15 U.S.C. § 1681b(b).

48.     Despite the representations Defendants presumably made to, and the instructions they received from, CastleBranch, Defendants systematically failed to provide proper disclosures and/or obtain authorization before procuring consumer reports for employment purposes, and failed to provide written description of rights under the FCRA, copies of background report, and/or reasonable time to respond or dispute consumer reports before taking adverse action.

49.     Defendants' practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statute and are counter to longstanding judicial and regulatory guidance.  In a 1998 advisory opinion letter, the Federal Trade Commission stated: "Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission."[5]

50.     By systematically failing to provide disclosures, Defendants willfully violated 15 U.S.C. § 1681b(b)(2) and (3).

51.     Defendants' willful conduct is reflected by, *inter alia*, the following:

(a) The FCRA was enacted in 1970; Fortis College, which was founded in 2008, has had over 11 years to become compliant; Education Affiliates Inc. was founded in 1984 and has had 35 years to become compliant;

(b) Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Defendants knew or had reason to know from their communications with CastleBranch that their conduct violated the FCRA;

---

[5] Federal Trade Commission, Advisory Opinion to Hauxwell (06-12-98) (June 12, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hauxwell-06-12-98

(d) Upon information and belief, Defendants certified to CastleBranch that they would comply with the disclosure requirements of the FCRA;

(e) Defendants repeatedly and routinely fail to provide any disclosure to procure consumer reports;

(f) Despite the explicit statutory text and depth of guidance directing a standalone document, Defendants systematically failed to provide proper disclosures and/or obtain authorization before procuring consumer reports for employment purposes, and failed to provide written description of rights under the FCRA, copies of background report, and/or reasonable time to respond or dispute consumer reports before taking adverse action; and

(g) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

53.    Plaintiff asserts the Disclosure and Authorization Claims on behalf of the class defined as follows:

> *Any person whose consumer report was procured by Defendants for employment purposes in the period beginning 2 years prior to the filing of the Complaint and continuing through the date the class list is prepared.*

54.    Plaintiff asserts the Adverse Action Claim on behalf of the subclass defined as follows:

> *Any person on whom Defendants have taken adverse action based in whole or in part on any information contained in a consumer report in the period beginning 2 years prior to the filing of this Complaint and continuing through the date the class list is prepared.*

55.     <u>Numerosity</u>: The class is so numerous that joinder of all class members is impracticable. Defendants regularly fail to provide any disclosure to procure consumer reports on job applicants. Thousands of employees of Defendants and/or companies for which Defendants provide support services satisfy the class definition.

56.     <u>Typicality</u>: Plaintiff's claims are typical of the members of the class. Defendants typically use an identical disclosure to procure consumer reports on prospective and existing employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendants treated Plaintiff consistent with other class members in accordance with their standard practices.

57.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

58.     <u>Commonality</u>: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class, including but not limited to:

(a) Whether Defendants procured consumer reports on prospective and existing employees;

(b) Whether Defendants violated the FCRA by procuring such consumer reports without a FCRA-compliant disclosure;

(c) Whether Defendants' FCRA violations were willful;

(d) The proper measure of statutory damages; and

(e) The proper measure of punitive damages.

59.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification will also preclude the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

60.     Plaintiff intends to send notice to all members of the class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the class members are available from Defendants' records.

### FIRST CLAIM FOR RELIEF
**Procuring Consumer Reports without First Making Proper Disclosures**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

61.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

62.     Defendants procured consumer reports, as defined by the FCRA, on Plaintiff and other class members. These reports were procured for employment purposes without Plaintiff or any class members being provided any disclosure, much less a clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(i).

63.     The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

64.     Defendants' procurement of Plaintiff's consumer report without proper disclosure or authorization caused her to sustain actual damages, i.e. lack of knowledge that her consumer report was going to be procured from a consumer reporting agency, the unauthorized invasion of her privacy, the loss of opportunity to respond to and/or dispute the information in her consumer report, and loss of employment and income.

65.     Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

66.     Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

67.     Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## SECOND CLAIM FOR RELIEF
### Failure to Obtain Authorization
### 15 U.S.C. § 1681b(b)(2)(A)(ii)

68.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

69.     Defendants procured consumer reports, as defined by the FCRA, on Plaintiff and other class members. These reports were procured for employment purposes without Plaintiff or any class members giving Defendants authorization to procure the reports in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

70.     The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

71.     Defendants' procurement of Plaintiff's consumer report without authorization caused her to sustain actual damages, i.e. lack of knowledge that her consumer report was going to be procured from a consumer reporting agency, the unauthorized invasion of her privacy, loss of opportunity to respond to and/or dispute the information in her consumer report and loss of employment and income.

72.     Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

73.     Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

74.     Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### THIRD CLAIM FOR RELIEF
**Taking Adverse Action without Complying with 15 U.S.C. § 1681b(b)(3)**
**15 U.S.C. § 1681b(b)(3)**

75.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

76.     Pursuant to 15 U.S.C. § 1681b(b)(3), an employer must satisfy these conditions before taking adverse action based on a consumer report:

(A) In general
Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

14

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

77.     Congress has clarified that the "employer must [] provide the consumer with *a reasonable period* to respond to any information in the report that the consumer disputes[,] and with written notice and the opportunity and time period to respond." [6]

78.     Further, a "reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer." H.R. REP. 103-486 at 40. While four days may not be "reasonable," eight days has been deemed a "reasonable period."[7]

79.     Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without first sending them pre-adverse action notices, which deprived Plaintiff and other class members of an opportunity to review and address any issues in their reports.

80.     Defendants failed to provide Plaintiff and other class members a copy of the procured background report before they took the adverse action against Plaintiff and other class members.

81.     Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without first providing Plaintiff and other class members with a written description of their rights under the FCRA.

---

[6] See *Reardon v. ClosetMaid Corp.*, No. 2:08-CV-01730, 2013 WL 6231606, at *13 (W.D. Pa. Dec. 2, 2013); H.R. REP. 103-486 at 40 (1994).
[7] *Id.*

15

82.    Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without giving them sufficient time after providing notice, a copy of the report, and a written summary of their rights to allow them to discuss the report with Defendants or otherwise respond before the adverse action was taken.

83.    The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(3)(A)(ii).

84.    By taking adverse action against Plaintiff without first providing her with a pre-adverse action notice, a copy of the background report, a written description of her FCRA rights, and reasonable time to respond or dispute the report's findings before the adverse action was taken, Defendants caused her to sustain actual damages, i.e. loss of opportunity to respond to and/or dispute the information in her consumer report and loss of employment and income.

85.    Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

86.    Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

87.    Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### PRAYER FOR RELIEF

88.    WHEREFORE, Plaintiff, on behalf of herself and the class, pray for relief as follows:

(a) Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

16

(b) Designating Plaintiff as Class Representatives and designating Plaintiff's Counsel as counsel for the class;

(c) Issuing proper notice to the class at Defendants' expense;

(d) Declaring that Defendants committed multiple, separate violations of the FCRA;

(e) Declaring that Defendants acted willfully, in deliberate or reckless disregard of Plaintiff's and class members' rights and Defendants' obligations under the FCRA;

(f) Awarding actual, statutory and/or punitive damages as provided by the FCRA;

(g) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

(h) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

RESPECTFULLY SUBMITTED,

Dated: July 29, 2019                By:  /s/ *Jason T. Brown*

Jason T. Brown (N.D. Oh. Bar # 35921996)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com

*Lead Counsel for Plaintiff*

17